UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>             Plaintiff,<br><br>   v.<br><br>DANIEL JIMENEZ,<br><br>            Defendant. | Case No. 15-cr-00547-JD-3<br><br>**ORDER RE PRETRIAL DETENTION**<br>Re: Dkt. No. 91 |

      The United States appeals Magistrate Judge Ryu's December 16, 2015 order releasing defendant Daniel Jimenez ("Jimenez") pending trial. Dkt. Nos. 85, 86, 91. The Court stayed the release order on December 18, 2015 and held an initial hearing on the government's appeal on December 30, 2015. Dkt. Nos. 89, 104. The Court ordered a second hearing and supplemental briefing to address new evidence proffered by the United States and whether different conditions of release should be considered. The second hearing took place on January 28, 2016. Dkt. No. 112.

      Judge Ryu found the decision to release Jimenez with conditions to be a close call and ordered release only after several hearings and carefully scrutinizing the collateral put up on bail. New evidence not presented to Judge Ryu shows that Jimenez had possession and control of multiple bank accounts through which flowed hundreds of thousands of dollars that he did not disclose to Pretrial Services. In light of the new evidence and the totality of circumstances in this case, the Court finds that defendant's flight risk and danger to the community cannot be reasonably managed under any conditions of release and consequently orders detention pending trial under 18 U.S.C. § 3142(e).

**BACKGROUND**

There is little dispute about the facts leading up to Jimenez's arrest and detention. On November 19, 2015, after an extensive investigation by federal and state law enforcement officers, a grand jury indicted Jimenez and 12 other individuals for running a large-scale drug trafficking operation. Dkt. No. 47. As detailed in the affidavit of a DEA agent in support of a related criminal complaint, Jimenez and the other defendants acted as regional distributors in Northern California of methamphetamine, cocaine and heroin sourced from Mexico. Dkt. No. 1 ¶¶ 15-17. The operation involved substantial quantities of guns and money. *Id*. The government characterizes Jimenez as a "facilitator" and "stash house operator" responsible for managing the operation's drug and money supplies. Dkt. No. 91 at 1-2, 5-6. Consistent with that role, wiretaps run during the investigation intercepted communications between Jimenez and others discussing the receipt and delivery of drugs and money from customers and couriers. Dkt. No. 1 ¶ 17(c). When Jimenez was arrested at his home pursuant to a federal warrant, agents found 2.6 kilograms of methamphetamine and 14.49 kilograms of cocaine hidden in cars parked there, $371,629 in cash bundles, two 9 mm handguns, a money counter, digital scales, and equipment for packaging drugs for sale, and a cell phone Jimenez had used to communicate with the investigation's primary wiretap target. Dkt. No. 91 at 1, 5-6.

Jimenez was indicted on one count of conspiracy to possess with intent to distribute and to distribute controlled substances, in violation of 21 U.S.C. §§ 846, 841(a)(1), and one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Dkt. No. 47. If convicted, Jimenez faces a mandatory minimum prison sentence of 15 years. Dkt. No. 91 at 5.

Jimenez made an initial appearance on October 14, 2015 before Magistrate Judge Ryu. Dkt. No. 3. The detention hearing was continued so Jimenez could engage counsel. Dkt. No. 6. On October 22, 2015, Jimenez moved for pretrial release, proposing a $295,000 bond secured by two of his brothers' properties, and supervision by Pretrial Services. Dkt. No. 16 at 5, 9. Judge Ryu held a detention hearing on October 26, 2016, at which the United States asked Judge Ryu to detain Jimenez pending trial because he is a danger to the community and poses a risk of flight.

Dkt. No. 91 at 3-4, Ex. A.  The government also objected to the proposed bond on a number of grounds, including that one of the proposed securing properties was subject to forfeiture in the case.  *See id*.  Jimenez offered to increase the bond secured by additional properties owned by his brothers and their spouses.  Dkt. No. 45 at 2.  At a further detention hearing on November 19, 2015, Judge Ryu voiced concern about the offer and asked to hear directly from the property owners on the issue.  Dkt. No. 48; Dkt. No. 91, Exh. B.

Judge Ryu interviewed Jimenez's relatives on November 23, 2015, accepted the new collateral and indicated she would order him released on several special conditions pending trial.  Dkt. No. 55; Dkt. No. 91, Exh. C (recording of Nov. 23, 2015 hearing).  In weighing the relevant statutory factors, Judge Ryu found that the nature and circumstances of the charged offense were very serious, and that there was a solid weight of evidence against the defendant in the drugs, weapons, and cash found at his residence and in the wiretap evidence showing his involvement.  Dkt. No. 91, Exh. C.  The Magistrate Judge also found that Jimenez had significant ties to both the United States and Mexico, and that he had not satisfactorily explained the source of about $21,000 in cash deposits reported to Pretrial Services.  *Id*.  Judge Ryu noted that Jimenez' criminal history was modest, including one felony drug possession conviction and two domestic violence arrests, and that he had no history of failing to appear for court.  *Id*.  Weighing all the factors together, Judge Ryu found the decision a close one.  Still, she was ultimately persuaded that the combination of a $500,000 bond secured by properties owned by three of defendant's brothers and their spouses, coupled with conditions including placing defendant on lockdown in a halfway house in the Bay Area, would be sufficient to mitigate risk of flight or danger to the community.  *Id*.; Dkt. No. 85.  Judge Ryu issued a written order memorializing these and other conditions of release on December 16, 2015 after the bonds were signed.  Dkt. No. 86.

The United States now seeks to revoke the release order.  Dkt. No. 91.  The United States contends that Jimenez is presumed to be a flight risk and a danger to the community based on the serious nature of the narcotics offenses charged against him.  *Id*. at 4-5.  The government also provided new evidence that more than $195,000 in cash deposits have been made into various bank accounts held by Jimenez -- accounts and deposits that were largely unknown to Pretrial

3

Services or the Magistrate Judge when they made their assessments. *Id*. at 6-8. Jimenez was given the opportunity to respond to this additional evidence in two rounds of briefing and two hearings. Dkt. Nos. 98, 104, 111, 112.

## DISCUSSION

### I.   STANDARDS

The Court reviews the pretrial release order of a magistrate judge de novo. *United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir.1990). Although the Court considers the same evidence presented to the magistrate judge, it does not defer to the magistrate judge's findings of fact or ultimate conclusion. *Id*. at 1193.

In deciding whether to grant or deny bail, the Court is mindful "of the presumption of innocence and its corollary that the right to bail should be denied only for the strongest of reasons." *United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985). The Bail Reform Act of 1984, 18 U.S.C. §§ 3141 *et seq.*, specifically mandates the release of charged individuals pending trial unless the Court "determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). "Doubts regarding the propriety of release are to be resolved in favor of defendants." *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir.1990).

The facts in this case shift the presumption against pretrial release. Jimenez faces a sentence of ten years or more in prison on a controlled substance offense, and has been charged with an offense under 18 U.S.C. § 924(c). Under the Bail Reform Act, either one of those conditions is enough to presume that no condition of release will reasonably assure public safety or the defendant's appearance. 18 U.S.C. §§ 3142(e)(3)(A) and (B). While the government retains the burden of persuasion, defendant now bears the burden of production to overcome this presumption. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). Even if the defendant proffers evidence to rebut it, "the presumption 'remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence" under the Bail Reform Act. *Id*. (quoting *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986)).

To determine if the pretrial detention standard is met, the Court evaluates four factors: "(1)

the nature and circumstances of the offense charged . . . ; (2) the weight of the evidence against the person; (3) the history and characteristics of the person . . . ; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

A finding that no conditions would reasonably assure public safety must be supported by clear and convincing evidence. *Id.* at § 3142(f)(2)(B); *Hir*, 517 F.3d at 1086. A finding of a risk of flight requires proof by a preponderance of the evidence. *Motamedi*, 767 F.2d at 1406. The government need show just one of these two risks -- danger to community or flight -- to prevail; it need not prove both. *United States v. Portes*, 786 F.2d 758, 765 (7th Cir. 1985).

If, after a bail hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e).

## II.     PRETRIAL DETENTION IS WARRANTED

### A.  The Statutory Factors Weigh Against Bail

After carefully considering the arguments and evidence of the parties, the Court finds that Jimenez should be detained pending trial. As an initial matter, the four factors in Section 3142(g) support denial of bail. The nature and circumstances of the offenses charged are very serious and weigh against release. The government has submitted evidence showing that Jimenez acted as a "facilitator" and "stash house operator" for a large-scale drug trafficking organization. Dkt. No. 91 at 1-2, 5-6. The evidence indicates that Jimenez served as a distribution manager responsible for receiving and storing drugs and money at his home. A search of Jimenez's home in connection with his arrest found a cellphone identified in wiretaps as used to communicate with another defendant about the drug enterprise, substantial quantities of methamphetamine and cocaine, multiple firearms and hundreds of thousands of dollars in cash. The drugs were found in Jimenez's garage in cars that the evidence suggests were used to bring narcotics into the United States from Mexico. Dkt. No. 91 at 3. One of the cars was registered to Jimenez at a different address. *Id*. As the government argues, the sizeable quantities of drugs and cash stored at

Jimenez's home indicate that he was trusted to perform an important role in the drug trafficking operation.

Another relevant factor is the potentially long sentence of imprisonment Jimenez faces. *Townsend*, 897 F.2d at 995 ("Consideration of the nature of the offenses charged involves consideration of the penalties"). Under 21 U.S.C. § 846 and 18 U.S.C. § 924(c), Jimenez is subject to at least a mandatory minimum sentence of fifteen years in prison if convicted. His potential term in prison could significantly exceed that. A possible sentence of this magnitude supports detention. *See United States v. Donagal*, No. 14-CR-00285-JST-1, 2014 WL 6601843, at *2 (N.D. Cal. Nov. 18, 2014).

The weight of the evidence also counts against release. While this factor is "the least important" in the detention analysis, the Court must consider it, *Hir*, 517 F.3d at 1090, and the evidence against Jimenez is substantial. During the search of Jimenez's home, the government seized over $1,000,000 of drugs, including almost 32 pounds of cocaine and 6 pounds of methamphetamine, over $371,000 in cash, money counters, drug packaging supplies, and firearms. These quantities of drugs, cash, and guns were largely stored in Jimenez's garage and in at least one vehicle registered to him. The government has since begun forfeiture proceedings on Jimenez's residence as a result of these seizures. Dkt. No. 78. The government also seized Jimenez's phone and determined that it had been used to communicate with another defendant in the case. In addition, wiretaps recorded conversations between Jimenez and another member of the organization discussing and coordinating shipment of drugs to the residence. Jimenez downplays this substantial evidence by saying that he was not personally observed receiving drugs and that much of the contraband and cash were in the cars in the garage, and not actually inside his house, but that does not meaningfully undercut the weight of the evidence against him. *See* Dkt. No. 98 at 10.

Jimenez offers some personal history and characteristics that count mildly against detention. He is a United States citizen and resident of California, and appears to have good family ties with siblings in various states and his adult children in California. Dkt. No. 98 at 2-4. Jimenez argues that the presence of family here and the willingness of his siblings to put up their

6

residential properties to secure a bond of $515,000 (not including the property subject to forfeiture) for his release shows that he is not a flight risk. Dkt. No. 111 at 4. The Magistrate Judge gave substantial stock to the significance of the siblings' tender of their homes as collateral, while noting a concern that all the Jimenez siblings owned their homes outright despite modest means and income. *See* Dkt. No. 91 at 11 (citing Ex. B at 10:46:41-10:47:11).

But although these considerations speak in Jimenez's favor, new evidence about Jimenez's access to substantial amounts of cash in combination with the totality of factors in this case persuade the Court that he poses a serious risk of flight. As noted, Jimenez currently faces a long sentence in prison on serious drug and gun charges that have a substantial amount of evidence behind them. He has significant ties to Mexico, where his mother lives and where he travels frequently. Dkt. No. 91 at 10; Dkt. No. 98 at 3. Jimenez himself reportedly estimated he has visited Mexico no less than 45 times, most recently in February 2015. Dkt. No. 91 at 10. These foreign ties are particularly worrisome from a flight perspective because the alleged conspiracy is based on drugs originating in Mexico. Jimenez is also unemployed and was convicted of possession of methamphetamine in 2000. Dkt. No. 98 at 4.

These factors are strong reasons why Jimenez might decide to flee, and the new evidence proffered by the government indicates that he has access to financial resources that make flight a serious risk. In the detention proceedings before the Magistrate Judge, Jimenez reported unemployment and only occasional work as a sales associate in a local food store and as an agricultural field worker earning $500 per week. Dkt. No. 91 at 9-10. Despite this history of sporadic employment at low-level jobs, Pretrial Services and IRS investigations found approximately $21,000 in out-of-state deposits made into bank accounts held by Jimenez between September 21 and October 8, 2015. *Id*. at 6. The Magistrate Judge found that Jimenez's effort to explain the source of this money was not particularly satisfactory but did not deny bail because of it. It turns out, however, Jimenez had access to far greater amounts of cash than he acknowledged. Additional investigation by the IRS revealed that, since January 2014, approximately $195,000 has flowed through multiple accounts in Jimenez's name at three different banks. *Id*. at 7. Jimenez did not disclose these accounts or cash flow to Pretrial Services or other authorities.

7

This evidence shows that Jimenez has had ready access to substantial amounts of money from sources that he cannot account for. Because the additional bank accounts were not discovered until after the initial detention proceedings before the Magistrate Judge, the Court invited Jimenez and his counsel to submit supplemental evidence and argument to challenge the government's new evidence and explain how the Court should address it. Dkt. No. 104. Jimenez submitted a supplemental brief that did not challenge the IRS's investigation or attack in any way the evidence about the bank accounts or the cash that flowed through them. Dkt. No. 111. Instead, Jimenez said that the cash came from buying and selling used cars and collecting on personal loans to individuals, among other vague sources. Jimenez did not tender any persuasive evidence to support his claims and generally failed to account for how so much money had been in his possession and control in light of his sporadic employment. And the approximately $195,000 in these accounts does not stand alone. The government seized approximately $371,629 in cash at Jimenez's home when he was arrested. All told, Jimenez has had ready access to approximately $566,000 in cash, which amply establishes that he can find the resources to flee should he chose to do so.

The Court is also concerned about Jimenez's lack of candor and truthfulness about his assets after his arrest. The record indicates that in initial interviews with Pretrial Services, Jimenez did not disclose the $195,000 or the accounts it flowed through. Dkt. No. 91 at 8, 10-11. In his supplemental response, defendant contends that he was asked only about "estimated balances" in his accounts, rather than "past deposits or withdrawals." Dkt. No. 111 at 2. He provides no evidence to support that claim but even assuming it to be credible, his explanation amounts at best to evasion by a technicality. Jimenez made no effort to disclose these accounts or cash flow when asked about his assets. It seems clear that he intended to hide that information. In another falsehood, he told Pretrial Services that he had a drug problem, which he later admitted was a lie to try to get into "a program." Dkt. No. 91 at 11. These factors raise substantial doubts about Jimenez's veracity and trustworthiness.

Consequently, in light of the new bank account evidence and the totality of factors in this case, the Court finds that Jimenez poses a serious risk of voluntary flight. His family ties do not

8

overcome these factors.

The Court also finds that Jimenez poses a danger to the community. The firearms and large caches of drugs found at Jimenez's home, the size and sophistication of the alleged trafficking organization, and the nature of Jimenez's role as facilitator support a finding that he is a danger. *See Portes*, 786 F.2d at 765 (finding "a serious danger to the community" in a "member of a large drug trafficking network" in light of the "drug network's ability to continue to function while the defendant awaits trial," weapons found in defendant's possession, and other evidence, including threats of reprisal); *United States v. Hubbard*, No. 92 CR 941, 1993 WL 4182, at *2 (N.D. Ill. Jan. 7, 1993) *aff'd,* 61 F.3d 1261 (7th Cir. 1995) ("Hubbard represents a danger to the community in that he is involved in large quantity drug transactions and has possessed firearms"). The risk of danger is bolstered by Jimenez's prior conviction for possession of methamphetamine and current unemployment, which raise the possibility that he would rely on drug related activity for financial support while on pretrial release. All of these factors together clearly and convincingly support a finding that defendant is a danger to the community.

### B. No Conditions Will Reasonably Assure The Defendant's Appearance And The Safety Of The Community

The Court finds that no conditions would reasonably assure Jimenez would appear at trial and not pose a danger to the community while on release. The Magistrate Judge proposed that Jimenez be placed on lockdown in halfway house in Bay Area, surrender his passport and be released only for Court or attorney visits, with no contact with co-defendants or witnesses and his appearances secured with a $500,000 bond posted by his brothers and spouses, in addition to other standard conditions of release. *See* Dkt. No. 86. In the supplemental briefing, Jimenez proposed a higher unsecured bond of up to $750,000 and additional location monitoring by Pretrial Services. Dkt. No. 111 at 4.

These conditions are insufficient to "reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). All of the conditions "contain one critical flaw. In order to be effective, they depend on [defendant's] good faith compliance." *Hir*, 517 F.3d at 1092. For the proposed conditions to be fruitful, Jimenez

must be trusted not to manipulate or circumvent the monitoring or make use of his access to cash and other resources to decamp to Mexico, where he has family members and is a frequent visitor. None of the proposed conditions would prevent him from simply walking away from the halfway house and slipping over the border, which the United States contends, without rebuttal by Jimenez, is not controlled for southbound travelers. Dkt. No. 91 at 10. And none of the conditions would effectively prevent him from continuing to be a danger to the community. Jimenez was a facilitator in the drug trafficking operation entrusted to hold the money and the drugs and arrange for deliveries. He could readily continue in this role during release by using cell phones, Internet access and other means of communication that cannot feasibly be monitored. *See Hir*, 517 F.3d at 1093.

Consequently, in light of the seriousness of the charges Jimenez is facing, his access to substantial amounts of cash from unknown sources, his familiarity and strong ties with Mexico, his lack of candor, the statutory presumption that no conditions of release are adequate given the serious controlled substance offense charged, and no countervailing evidence from the defendant, the Court finds there is an unacceptably high risk that Jimenez would not comply in good faith with the proposed conditions, or any other combination of release conditions, imposed upon him. Accordingly, the Court finds that "no condition or combination of conditions" will reasonably assure the defendant's appearance or the safety of the community. 18 U.S.C. § 3142(e); *see Hir*, 517 F.3d at 1093-94.

## CONCLUSION

The government has met its burden of showing by clear and convincing evidence that Jimenez is a danger to the community, and showing by a preponderance of the evidence that he is a flight risk, and Jimenez has not overcome the presumption that "no condition or combination of conditions will reasonably assure [his] appearance" and the safety of the community. 18 U.S.C. § 3142(e). Jimenez will be detained pending trial.

Pursuant to 18 U.S.C. § 3142(i), the Court orders that Jimenez be detained "in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal," that he "be afforded reasonable opportunity for private

10

consultation with counsel," and that "on order of a court of the United States or on request of an attorney for the Government," he be delivered "to a United States marshal for the purpose of an appearance in connection with a court proceeding."

**IT IS SO ORDERED.**

Dated: February 9, 2016

JAMES DONATO
United States District Judge

11